# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

SARAH A.[1]                                              Case No. 1:21-cv-599

          Plaintiff,                                    McFarland, J.

    v.                                                       Bowman, M.J.

COMMISSIONER OF SOCIAL SECURITY,

          Defendants.

## REPORT AND RECOMMENDATION

Plaintiff filed this Social Security appeal in order to challenge the Defendant's determination that he is not disabled. Proceeding through counsel, Plaintiff presents five claims of error, all of which the Defendant disputes.  As explained below, the Administrative Law Judge (ALJ)'s finding of non-disability should be **AFFIRMED**, because it is supported by substantial evidence in the administrative record.

### I.    Summary of Administrative Record

Plaintiff applied for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) on June 19, 2019, alleging disability as of June 9, 2019. (Tr. 175).  The Administration denied Plaintiff's claim initially and upon reconsideration. A telephone hearing was held on July 28, 2020, at which Plaintiff and a vocational expert testified (Tr.32-77). Shortly after, the ALJ issued a decision, denying Plaintiff's applications. (Tr. 12-28). Plaintiff now seeks judicial review of the denial of his application for benefits.

---

[1] The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that, due to significant privacy concerns in social security cases, federal courts should refer to claimants only by their first names and last initials.  *See* General Order 22-01.

At the time of the hearing Plaintiff was thirty-seven years old.  She graduated from high school and attended three years of college. (Tr. 192). She has past relevant work as an insurance agent. (Tr. 193). Plaintiff alleges disability based primarily depression and anxiety, panic disorder, and seizures.

Based upon the record and testimony presented at the hearing, the ALJ found that Plaintiff had the following severe impairments: "history of left frontal lobe meningioma with vasogenic cerebral edema, midline shift of brain, and diplopia; s/p resection with mind residual left frontal lobe encephalomalacia and glosis; seizure disorder; obesity; chronic depressive disorder, and adjustment disorder with depression and anxiety." (Tr. 28). The ALJ concluded that none of Plaintiff's impairments alone or in combination met or medically equaled a listed impairment in 20 C.F.R. Part 404, Subp. P, Appendix 1. Despite these impairments, the ALJ determined that Plaintiff retains the RFC to perform sedentary work subject to the following limitations:

> She can have a 15-minute break every 2 hours and 30-minute lunch break; can push/pull within the lift and carry restrictions; cannot climb ladders, ropes, or scaffolds, but can occasionally climb ramps or stairs; can occasionally balance, but never on wet, uneven, or moving surfaces; can occasionally stoop, crouch, kneel, or crawl; she must avoid all exposure to the following hazards: unprotected heights, unprotected sharp objects; unprotected bodies of water; the use of moving machinery or machinery with unprotected moving parts, or commercial driving; she can tolerate work environments with up to a moderate level of noise, such as typically found in a business office or department store; she cannot work outdoors; further, the claimant can perform simple, routine, repetitive 1-2 step tasks, with an SVP up to 2, which can be learned by demonstration, and requires the ability to concentrate, persist, or maintain pace no longer than 2 hours at a time; and is performed in a low stress work environment, defined as free of fast-paced production requirements, involves only simple, work-related decisions, few, if any, work place changes, changes can be explained in advance and gradually implemented, involves no interaction with the general public, and up to occasional and superficial interaction (no conflict

> or dispute resolution, persuading others, tandem tasks or team work), with
> co-workers or supervisors.

(Tr. 20-21). Based upon the record as a whole including testimony from the vocational

expert, and given Plaintiff's age, education and work experience, and the RFC, the ALJ

concluded that Plaintiff could perform a significant number of unskilled jobs in the regional

and national economy, including such jobs as final assembler, table worker, and

document preparer. (Tr. 27). Accordingly, the ALJ determined that Plaintiff is not under

disability, as defined in the Social Security Regulations, and is not entitled to DIB and/or

SSI. *Id.*

The Appeals Council denied Plaintiff's request for review.  Therefore, the ALJ's

decision stands as the Defendant's final determination.  On appeal to this Court, Plaintiff

argues that the ALJ erred by: (1) improperly considering the findings of the state agency

psychological consultants, (2) failing to include limitations relating to the quality of

Plaintiff's social interaction in his RFC assessment, (3) improperly evaluating the findings

of Dr. Patel; (4) improperly evaluating Plaintiff's subjective complaints; and (5) failing to

include all of Plaintiff's limitations in his hypothetical question to vocational expert.  Upon

close analysis, I conclude that Plaintiff's arguments are not well-taken.

## II.    Analysis

### A.  Judicial Standard of Review

To be eligible for benefits, a claimant must be under a "disability."  *See* 42 U.S.C.

§1382c(a).  Narrowed to its statutory meaning, a "disability" includes only physical or

mental impairments that are both "medically determinable" and severe enough to prevent

the applicant from (1) performing his or her past job and (2) engaging in "substantial

gainful activity" that is available in the regional or national economies.  *See Bowen v. City of New York*, 476 U.S. 467, 469-70 (1986).

When a court is asked to review the Commissioner's denial of benefits, the court's first inquiry is to determine whether the ALJ's non-disability finding is supported by substantial evidence.  42 U.S.C. § 405(g).  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (additional citation and internal quotation omitted).  In conducting this review, the court should consider the record as a whole. *Hephner v. Mathews*, 574 F.2d 359, 362 (6th Cir. 1978).  If substantial evidence supports the ALJ's denial of benefits, then that finding must be affirmed, even if substantial evidence also exists in the record to support a finding of disability.  *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994).  As the Sixth Circuit has explained:

> The Secretary's findings are not subject to reversal merely because substantial evidence exists in the record to support a different conclusion.... The substantial evidence standard presupposes that there is a 'zone of choice' within which the Secretary may proceed without interference from the courts.  If the Secretary's decision is supported by substantial evidence, a reviewing court must affirm.

*Id.*  (citations omitted).

In considering an application for supplemental security income or for disability benefits, the Social Security Agency is guided by the following sequential benefits analysis: at Step 1, the Commissioner asks if the claimant is still performing substantial gainful activity; at Step 2, the Commissioner determines if one or more of the claimant's impairments are "severe;" at Step 3, the Commissioner analyzes whether the claimant's impairments, singly or in combination, meet or equal a Listing in the Listing of Impairments; at Step 4, the Commissioner determines whether or not the claimant can

still perform his or her past relevant work; and finally, at Step 5, if it is established that claimant can no longer perform his or her past relevant work, the burden of proof shifts to the agency to determine whether a significant number of other jobs which the claimant can perform exist in the national economy. *See Combs v. Commissioner of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006); see also *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528-29 (6th Cir. 1997) (explaining sequential process); 20 C.F.R. §§404.1520, 416.920.

A plaintiff bears the ultimate burden to prove by sufficient evidence that he is entitled to disability benefits. 20 C.F.R. § 404.1512(a). A claimant seeking benefits must present sufficient evidence to show that, during the relevant time period, he suffered an impairment, or combination of impairments, expected to last at least twelve months, that left him unable to perform any job. 42 U.S.C. § 423(d)(1)(A).

**B. The ALJ's Decision is supported by Substantial Evidence**

*1. Evaluation of the Opinion Evidence*

Plaintiff argues that the ALJ improperly evaluated the evidence of record. Specifically, Plaintiff asserts that the ALJ improperly evaluated the opinions of the state agency psychologists. Plaintiff also contends that the ALJ erred by improperly determining that Dr. Patel's statement did not qualify as a medical opinion. Plaintiff's contentions will be addressed in turn.

Effective for claims filed on or after March 27, 2017, such as Plaintiff's claim, the agency has comprehensively revised its regulations that govern medical opinions. Pursuant to the updated regulations, the ALJ now considers the persuasiveness of a medical opinion rather than assigning weight to the opinion. See Revisions to Rules

Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844 (Jan. 18, 2017) (technical errors corrected by 82 Fed. Reg. 15, 132-01 (Mar. 27, 2017)). The most important factors in evaluating an opinion's persuasive value are (1) supportability, and (2) consistency. 20 C.F.R. § 404.1520c(b)(2). The agency no longer has a "treating physician rule" deferring to treating source opinions. 82 Fed. Reg. 5844, 5853 (Jan. 18, 2017) (technical errors corrected by 82 Fed. Reg. 15,132 (Mar. 27, 2017)). Under the new regulations, the agency "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [the claimant's own] medical sources." 20 C.F.R. § 404.1520c(a). Additionally, the ALJ will consider the following factors when considering medical opinions: relationship with the claimant; specialization; and other factors, including understanding of the agency's disability program's policies and evidentiary requirements. 20 C.F.R. § 404.1520c(c)(1)-(5). The new regulations also alter how the ALJ articulates his consideration of medical opinions. While the ALJ must articulate consideration of all medical opinions, the new regulations no longer mandate the "controlling weight" analysis or the "good reasons" standard in weighing a treating source opinion. Compare 20 C.F.R. § 404.1527(c)(2) with 20 C.F.R. § 404.1520c(a), (b). The ALJ is only required to explain how he considered the supportability and consistency factors, 20 C.F.R. § 404.1520c(c)(1)-(2), which are the two most important factors in determining the persuasiveness of a medical source's opinion or a prior administrative finding. 20 C.F.R. 404.1520c(b)(2).

### A.  State Agency Psychologists

Plaintiff argues first that the ALJ improperly evaluated the opinions of the state agency.  Specifically, Plaintiff contends that the ALJ erred in failing to note that the state agency consultants used an "improper" standard of law in suggesting that her impairments must meet or equal a listing to be found disabled.  Plaintiff further contends that the state agency psychologist failed to consider evidence of her "nerve treatment." Plaintiff's contentions lack merit.

State agency psychological consultants Paul Tangeman, Ph.D., and Carl Tishler, Ph.D., found that Plaintiff would be able to perform simple, one to two-step tasks, some multi-step tasks that are not fast paced in nature, and that she could interact with the general public, coworkers and supervisors on no more than a superficial basis in a static work environment that does not require strict production demands. (Tr. 89-91, 104-06). In support of these findings, the consultants considered Plaintiff's reported difficulty remembering words and cognitive problems but that she was not seeing any psychiatric doctors at the time of the assessment. (Tr. 85-86, 101). The consultants also considered that although Plaintiff felt depressed and reported having little motivation at times to get out of bed, she nonetheless could overcome these symptoms. (Tr. 85-86, 101). In finding the state agency opinions "generally persuasive", the ALJ found that these opinions were well-supported. (Tr. 25).

The ALJ also explained these opinions were consistent with the evidence of record, including the evidence received after these opinions were rendered. (Tr. 25). Specifically, the ALJ explained that they were supported by and consistent with the evidence, as Plaintiff had varying mental status exam findings, sometimes showing

abnormalities but on other occasions, with normal findings. (Tr. 25, citing Tr. 1717, 1727). Indeed, the record shows that Plaintiff only presented with abnormality on occasion and other times her mental status exam findings were largely intact related to mood, affect, attention/concentration, thought process, orientation, insight, judgment, behavior, speech, and memory. (Tr. 287-89, 378, 387, 786, 795, 823, 828, 1707, 1717, 1727, 1749). The ALJ also considered that the opinions were within the area of the consultants' specialty (psychology) and that as state agency reviewing psychologists, they were familiar with the Commissioner's regulations, Agency policy, and evidentiary requirements. This explanation by the ALJ was all that was required under the revised regulations, which only require an explanation of the most important factors of "supportability" and "consistency." 20 C.F.R. § 404.1520c(b)(2).

As noted by the Commissioner, the state agency consultants appropriately followed the sequential evaluation used in disability claims in determining whether Plaintiff's conditions met or equaled a listing prior to assessing her RFC. (Tr. 78-93, 95-108). Had the consultants thought the standard for disability ended at step three (i.e., whether Plaintiff's impairments met or equaled a listing), they would not have proceeded to the fourth and fifth steps of the process. Even assuming the consultants had erred, Plaintiff has not established any prejudice here since the ALJ made no such error and reasonably found that she was not disabled at step five. (Tr. 20-27).

Furthermore, Plaintiff contends that the ALJ failed to recognize that the consultants' opinions did not consider evidence of her "nerve" (mental health) treatment, which was submitted after these assessments were made. (Doc. 5 at 2). This assertion lacks merit.  The ALJ explicitly noted that the opinions were generally persuasive because

they were "well-supported and consistent with the record as a whole, ***including evidence received at the hearing level after their reviews***" (Tr. 25) (emphasis added).

As such, the undersigned finds that the ALJ properly considered that these opinions were rendered prior to the submission of this evidence, but that such evidence did not show disabling limitations. In light of the foregoing, the ALJ's evaluation of this opinion evidence is substantially supported.

B. *Dr. Patel*

In his decision the ALJ noted that Veer Patel, D.O. was Plaintiff's treating primary care provider. (Tr. 26). As detailed by the ALJ, in February 2020, Dr. Patel noted that Plaintiff had difficulty concentrating and processing information. He reported that Plaintiff's symptoms of delayed cognition, slowed processing, and slowed concentration are related to her seizures and meningioma. In July 2020, Dr. Patel reported that Plaintiff cannot drive due to seizures and cannot work. The ALJ determined that Dr. Patel's statement that Plaintiff cannot work "is not a medical opinion with in the regulations, such that is it not entitled to any particular deference. Plaintiff claims the ALJ's decision in this regard is erroneous. Plaintiff's contention is unavailing.

A medical opinion is a "statement from a medical source about what you can still do despite your impairment(s) and whether you have one or more impairment-related limitations or restrictions" in "[y]our ability to perform mental demands of work activities, such as understanding; remembering; maintaining concentration, persistence, or pace; carrying out instructions; or responding appropriately to supervision, co-workers, or work pressures in a work setting." 20 C.F.R. § 404.1513(a)(2). The revised regulations that govern claims filed after March 27, 2017, such as this one, do not require an ALJ to make

detailed findings on evidence he finds neither valuable nor persuasive. 20 C.F.R. § 404.1520b(c)(2). The regulations specifically contemplate that statements about whether a claimant is or is not disabled, able to work, or is able to perform regular and continuing work are considered under the umbrella of evidence that is "inherently neither valuable nor persuasive" because they are statements on issues reserved to the Commissioner. 20 C.F.R. § 404.1520b(c)(3)(i).

As such, these statements do not require any analysis by the ALJ. Dr. Patel's statements clearly fall into this category, as he only gave a conclusory statement that Plaintiff "cannot work" (Tr. 1745) and requested that her disability application "be considered again." (Tr. 387). As noted by the Commissioner, absent from Dr. Patel's statements is any form of specific functional limitations or number of days that Plaintiff would be absent from work, as Plaintiff suggests.

Accordingly, the undersigned finds that the ALJ properly discounted Dr. Patel's statement that Plaintiff's cannot work.

*2. Mental RFC*

Plaintiff argues that the ALJ's RFC fails to properly account for her mental impairments. Specifically, Plaintiff argues that the ALJ erred in his definition of "superficial" because he failed to find that superficial refers to the quality of such contact and not to the quantity of contact on an unskilled, entry-level job. (Doc.5 at 5).

Upon careful review, the undersigned finds that the RFC finding here accounted for both the quantity and quality of interaction Plaintiff could have in the workplace. First, Plaintiff was limited to occasional and superficial interaction with supervisors and coworkers and no interaction with the public. (Tr. 21). As noted by the Commissioner, the

Case: 1:21-cv-00599-MWM-SKB Doc #: 9 Filed: 08/22/22 Page: 11 of 17  PAGEID #: 1829

term "occasional" has an unambiguous meaning under Agency policy and is defined as "occurring from very little up to one-third of the time." See SSR 83-10. Accordingly, the ALJ accounted for the quantity of interaction Plaintiff could have.

Here, in terms of quality of interaction, Plaintiff was limited to "superficial" interaction with supervisors and coworkers. (Tr. 21). This term has no defined meaning under Agency policy; as such, the ALJ provided a definition of "superficial" as work involving "no conflict or dispute resolution, persuading others, tandem tasks or team work." (Tr. 21). This definition clearly accounts for the quality of interaction Plaintiff was limited to. Seeing as Plaintiff has failed to put forth any regulatory or Agency definition of the term "superficial" that contradicts the ALJ's RFC assessment, she has failed to carry the burden here.

Additionally, as outlined by the Commissioner, Plaintiff makes no showing that she was harmed at Step Five. The unskilled jobs identified by the ALJ at step five could still be performed in light of Plaintiff's social limitations. See *Milliken v. Astrue*, 397 F. App'x 218, 223 (7th Cir. 2010) ("Unskilled work would not seem to require intense contact with supervisors and coworkers . . . ."); SSR 85-15, 1985 WL 56857 ("[Unskilled] jobs ordinarily involve dealing primarily with objects, rather than with data or people . . . ."). Here, the VE testified that Plaintiff could perform work as a final assembler, table worker, and document preparer despite being limited to occasional and superficial interaction with coworkers and supervisors. (Tr. 27, 70).

### 3. Plaintiff's subjective Complaints

Plaintiff challenges the ALJ's evaluation of her subjective reports that she was disabled by her mental impairments. In this regard, Plaintiff contends, *inter alia,* that the

11

ALJ "improperly discounted her subjective reports based on lack of treatment for nerves prior to reconsideration." (Doc. 5 at 8). Plaintiffs' contentions are unavailing.

It is the job of the ALJ, and not the reviewing court, to evaluate the credibility of Plaintiff's subjective statements. *Foster v. Halter*, 279 F.3d 348, 353 (6th Cir. 2001) ("Our role is not to . . . examine the credibility of the claimant's testimony."); *Brainard v. Sec. of Health & Human Svcs.*, 889 F.2d 679, 681 (6th Cir. 1989) ("We do not . . . make credibility findings."). Accordingly, this part of the ALJ's determination is given great weight and great deference. *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 476 (6th Cir. 2003) ("Upon review, we are to accord the ALJ's determinations of credibility great weight and deference particularly since the ALJ has the opportunity, which we do not, of observing a witness's demeanor while testifying.").

Agency regulations require the ALJ to look at both the objective medical evidence and a nonexhaustive list of factors including: (1) daily activities; (2) the location, duration, frequency, and intensity of pain or other symptoms; (3) factors that precipitate and aggravate the symptoms; (4) the type, dosage, effectiveness, and side effects of any medication taken to alleviate pain or other symptoms; (5) treatment, other than medication; (6) any measures other than treatment an individual uses or has used to relieve pain or other symptoms; and (7) other relevant factors. 20 C.F.R. § 404.1529(c); SSR 16-3p, 2017 WL 5180304 at *7-8. An ALJ is not required to discuss every factor in his ruling. *Id*

Here, the ALJ properly determined that Plaintiff's subjective allegations of severe and persistent mental symptomatology were undermined by the varying mental status exam findings, some showing abnormalities and others revealing normal findings, (Tr.

12

24). *See Walters v. Comm'r of Soc*. Sec., 127 F.3d 525, 532 (6th Cir. 1997) ("The absence of sufficient objective medical evidence makes credibility a particularly relevant issue, and in such circumstances, this court will generally defer to the Commissioner's assessment when it is supported by an adequate basis."). To the extent that Plaintiff points to some abnormal findings in the record that could support her allegations, so long as substantial evidence supports the ALJ's findings, this Court should "defer[s] to those findings 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'" *Smith v. Comm'r of Soc. Sec.*, No. 3:15-cv-384, 2017 WL 427359, at *7 (S.D. Ohio Feb 1, 2017) (MJ Ovington) (citations omitted); *see also Ulman v. Comm'r of Soc. Sec.*, 693 F.3d 709, 713–14 (6th Cir. 2012) ("As long as the ALJ cite[s] substantial, legitimate evidence to support his factual conclusions, we are not to second-guess."); *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004) ("As long as substantial evidence supports the Commissioner's decision, we must defer to it, even if there is substantial evidence in the record that would have supported an opposite conclusion.")

As noted by the Commissioner, the ALJ discussed Plaintiff's testimony regarding the frequency and intensity of her symptoms, her medications and side effects, and her treatment history. (Tr. 21-24). See SSR 16-3p, 2016 WL 1119029 at *7 (Mar. 16, 2016). Despite claiming her mental impairments were debilitating, Plaintiff did not seek mental health treatment until November 2019, and only utilized conservative measures, such as medication and counseling. (Tr. 23, 786, 1749). The ALJ discussed that Plaintiff reported having panic attacks and racing thoughts, but Plaintiff also admitted that these symptoms responded to Ativan. (Tr. 21). The ALJ considered that Plaintiff reported severe symptoms but that she presented with normal mood after starting Sertraline in mid-2020. (Tr. 24,

citing Tr. 1727). See 20 C.F.R. § 404.1529(c)(3)(v) (considering the treatment received for relief of symptoms). The ALJ also reasonably considered Plaintiff's daily activities. See SSR 16-3p (an ALJ may consider statements about a claimant's daily activities when assessing the consistency of the claimant's statements). Here, the ALJ considered that Plaintiff reported not being able to leave her home due to her mental symptoms but that she talked with family members on a regular basis and was capable of ordering her groceries online. (Tr. 19-20). *See Meyer v. Comm'r of Soc. Sec.*, No. 1:09-cv-814, 2011 WL 1124698 at *11 (S.D. Ohio Feb. 11, 2011) (Litkovitz, MJ) ("As a matter of law, the ALJ may consider [the claimant's] household and social activities in evaluating her assertions of pain or limitations.") (citing *Blacha*, 927 F.3d at 231). The ALJ also discussed that the cooking and household chores were managed by her fiancé and children. (Tr. 20).

In light of the foregoing, the undersigned finds that the ALJ's evaluation of Plaintiff's subjective complaints complied with Agency Regulations and controlling law. Accordingly, the ALJ's decision is substantially supported in this regard and should not be disturbed.

4. *Hypothetical Questions*

Plaintiff's final assignment of error asserts that the ALJ's analysis at step-five is not supported by substantial evidence. Namely, Plaintiff contends that the ALJ's hypothetical questions to the vocational expert were improper because he failed to properly define superficial work. Plaintiff further argues that the ALJ failed to include the number of days she would be absent from work and the extra breaks needed for her crying spells. Plaintiff's assertions are unavailing.

14

The Sixth Circuit has held that a hypothetical question must only include a claimant's credible impairments and limitations. *See Smith v. Halter,* 307 F.3d 377, 378 (6th Cir. 2001) (emphasis added); *Casey v. Sec'y of Health & Human Servs.,* 987 F.2d 1230, 1235 (6th Cir. 1993). The ALJ was not required to ask about the impact of the opined limitations that he did not accept. See *Casey v. Sec'y of Health & Human Servs.,* 987 F.2d 1230, 1235 (6th Cir. 1993) ("It is well established that an ALJ may pose hypothetical questions to a vocational expert and is required to incorporate only those limitations accepted as credible by the finder of fact.") (citing *Hardaway v. Sec'y of Health & Human Servs.*, 823 F.2d 922 (6th Cir. 1987)).

Here, the ALJ's hypothetical question was supported by the medical record and other evidence as detailed above, and Plaintiff has not shown that she had limitations greater than those reflected in the ALJ's hypothetical question and eventual RFC finding. Accordingly, the ALJ's decision is substantially supported in this regard.

In sum, the ALJ's findings in this case were well within the zone of reasonable choices. See *McClanahan*, 474 F.3d at 833; accord *Ulman v. Comm'r of Soc. Sec.*, 693 F.3d 709, 713-14 (6th Cir. 2012) ("As long as the ALJ cite[s] substantial, legitimate evidence to support his factual conclusions, we are not to second-guess."); *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004) ("As long as substantial evidence supports the Commissioner's decision, we must defer to it, even if there is substantial evidence in the record that would have supported an opposite conclusion."). Substantial evidence supports the ALJ's findings and her conclusion that Plaintiff was not disabled within the meaning of the Social Security Act.

### III.    Conclusion

For the reasons explained herein, **IT IS RECOMMENDED THAT** Defendant's decision is **SUPPORTED BY SUBSTANTIAL EVIDENCE**, and should be **AFFIRMED**, and that this case be **CLOSED**.


 *s/Stephanie K. Bowman*
Stephanie K. Bowman
United States Magistrate Judge

16

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

SARAH A.[2]                                        Case No. 1:21-cv-599

        Plaintiff,                              McFarland, J.
    v.                                               Bowman, M.J.

COMMISSIONER OF SOCIAL SECURITY,

        Defendants.

**NOTICE**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to this Report & Recommendation ("R&R") within **FOURTEEN (14) DAYS** after being served with a copy thereof.  That period may be extended further by the Court on timely motion by either side for an extension of time.  All objections shall specify the portion(s) of the R&R objected to, and shall be accompanied by a memorandum of law in support of the objections.  A party shall respond to an opponent's objections within **FOURTEEN DAYS** after being served with a copy of those objections.  Failure to make objections in accordance with this procedure may forfeit rights on appeal.  *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).

---

[2] The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that, due to significant privacy concerns in social security cases, federal courts should refer to claimants only by their first names and last initials.  *See* General Order 22-01.

17